KLEIN and wife *vs.* JEWETT, Receiver of the Erie Railway Company.

1. Where an injury results from the default or misconduct of a receiver, appointed by a court of equity, while acting under the color of the authority of the court—there being no dispute as to the power of the court to make the order under which he claims to have acted—the court may, in its discretion, either take cognizance of the question of the receiver's liability, and determine it, or permit the aggrieved party to sue at law.

2. But if the power of the court to make the order is disputed, the court then has no choice: it must assume exclusive jurisdiction, and inhibit the aggrieved person from seeking redress against the receiver in any other tribunal.

3. A receiver operating a railroad under the order of a court of equity, stands, in respect to duty and liability, just where the corporation would, were it operating the road; and the question, whether or not the receiver is liable for negligence, must be tested by the same rules that would be applied if the corporation was the actual party defendant before the court.

4. To permit a train to pass on a track between a depot, and another track on which a passenger train was standing while discharging and receiving passengers, just as passengers were passing from the depot to take that train, and across which track they were obliged to walk to reach their train, without any provision having been made on the part of the company to avert danger—*held*, to have been actionable negligence.

5. *Held*, that there was no contributory negligence in this case, barring a right of action under the sixty-seventh section of the act concerning railroads.

6. The rule, that any person who goes upon a railroad track, incautiously, or without using all reasonable precaution to escape injury, assumes the hazard, and if injury ensues, is without remedy, is to be applied in determining the liability of a railroad corporation where the

injury is sustained by a person while crossing the track on a public highway; but it has no application to a case where, by the arrangement of the corporation, it is made necessary for passengers to cross the track in passing to and from the depot to the cars.

7. When a railroad company has created extra danger, it is bound to use extra precautions, and the precautions to be adopted must be adequate to insure the safety of every passenger who exercises ordinary care.

8. Damages for injuries arising from negligence of a railroad company, must cover present loss and that which may arise from future incapacity; they must also embrace compensation for pain and suffering. .

9. A married woman can only recover damages for her personal injury and suffering. The loss of income from her incapacity, and the expenses of her cure, must be recovered by her husband.

10. The damages and costs, directed to be paid out of the current earnings of the road; the injuries having been inflicted while the road was under the control of a receiver.

On petition for leave to sue the receiver at law.

*Mr. T. M. Moore,* for petitioners.

*Mr. R. Wayne Parker* and *Mr. C. Parker,* for receiver.

THE VICE-CHANCELLOR.

The petitioners, in this case, allege they have sustained serious personal injuries, in consequence of the negligence of the employees of the receiver of the Erie Railway Company, and they ask a remedy for the recovery of their damages, either in this court, or that they may be permitted to sue at law. I think the rule may be considered settled, that where an injury results from the default or misconduct of a receiver, appointed by a court of equity, while acting under color of the authority of the court—there being no dispute as to the power of the court to make the order under which he claims to have acted—the court may, in its discretion, either take cognizance of the question of the receiver's liability and determine it, or permit the aggrieved party to sue at law. But if the power of the court is disputed, the court then has no choice; it must assume exclusive jurisdiction, and inhibit

Klein v. Jewett.

the aggrieved person from seeking redress against the receiver in any other tribunal. Any other course, when its jurisdiction is assailed, would be an abandonment, by the court, of both its power and dignity. *Aston* v. *Heron*, 2 *Mylne & Keene* 390; *Parker* v. *Browning*, 8 *Paige* 388. In this case the power of the court is not questioned, and the parties have consented that the matter in controversy shall be determined here.

It was not seriously disputed, the receiver must be held liable if actionable negligence was shown. Upon principle, it would seem to be clear, that no person can be permitted to exercise the rights and powers of a common carrier, especially when they embrace the franchises granted to a railroad corporation, except subject to the duties and liabilities of common carriers. Whether the receiver is regarded as the officer of the law, or the representative of the proprietors of the corporation, or its creditors, or as combining all these characters, he is entrusted with the powers of the corporation, and must therefore necessarily be burdened with its duties and subject to its liabilities. There can be no such thing as an irresponsible power, exerting force or authority, without being subject to duty, under any system of laws framed to do justice. It is an inseparable condition of every grant of power by the state, whether expressed or not, that it shall be properly exercised, and that the grantee shall be liable for injuries resulting, directly and exclusively, from his negligence in its use.

Both upon principle and authority, I think it must be held, that a receiver, operating a railroad under the order of a court of equity, stands, in respect to duty and liability, just where the corporation would, were it operating the road, and the question whether or not the receiver is liable for negligence, must be tested by the same rules that would be applied if the corporation was the actual party defendant before the court. *Meara's Adm'r* v. *Holbrook and Rosevelt*, 20 *Ohio St. R.* 137; *S. C.*, 5 *Am. Reports* 633; *Blumenthal* v. *Brainerd*, 38 *Vt.* 402; *Paige* v. *Smith*, 99 *Mass.* 395.

The petitioners were injured while passing from the depot at Passaic city, to a passenger train, leaving that place for New York, at thirty-seven minutes after nine o'clock in the evening. They had purchased tickets giving them a right of passage to New York, on this train. At this point there are two tracks, and the depot building stands about sixteen feet east of the exterior rail of the east track. The train to New York was standing on the west track, making it necessary for passengers going from the depot to the passenger train, to cross the east track. There was no other means of passage. The petitioners, on hearing the signal of approach of the train they intended to take, passed out of the depot with their two children and a friend, who had the children in charge to assist them in getting on the train; they stepped from the platform of the depot, on the track—the platform being on a level with the track—just as the passenger train stopped, and were making their way, diagonally, from the point where they first stepped on the track, to the platform, between the second and last car of the passenger train, with their backs to the source of peril, when the locomotive of a western bound freight train, on the east track, running at the rate of eight or nine miles an hour, struck them, throwing the husband on one side of the track and the wife on the other, and seriously injuring both. The proofs show the injuries were inflicted by the locomotive of an irregular freight train, without number, and that it gave no warning of its approach or danger, until it was opposite the locomotive of the passenger train, and so close upon the petitioners, that they could only escape by comprehending the danger at the very instant the signal was given, and the exercise of great presence of mind in the face of sudden and appalling peril, then its whistle was blown; but just at that moment the locomotive of the passenger train was making a very loud noise in letting off steam. None of the employees of the receiver in charge of the depot, or either of the trains, seem to have made any provision whatever to avert the danger of having a freight train pass this point, while the passenger train was there discharging

and receiving passengers. Indeed, the agent in charge of the depot seems to have been utterly unconscious of danger, or criminally indifferent to his duty, for on the arrival of the passenger train at the depot, he was at an ice cream saloon, near there, where he remained until the alarm was sounded. These facts, in my judgment, establish a clear case of actionable negligence.

The counsel of the receiver, however, deny the right of the petitioners to compensation, on the ground that they, in part, contributed, by the want of ordinary caution, to the injuries they sustained. They, indeed, assert the petitioners have been guilty of that description of contributory negligence which, by statutory provision, deprives them of all right of action. The 67th section of the act concerning railroads (*Revision* 714) declares, that if any person shall be injured whilst walking, standing, or playing on any railroad, such person shall be deemed to have contributed to the injury, and shall not recover damages therefor; but it is also declared, that the rule thereby established shall not apply to any person crossing a railroad at a lawful crossing. It is perfectly manifest, I think, this statute does not touch the case in hand. The legislative intent is plain. It was intended to prevent a recovery by a person who sustained an injury while committing a trespass, in using a railroad as a foot-path, or a place to stand or to play, but the law makers have not said, and I presume never will say, that a person who is injured by the negligence of the managers of a railroad, while crossing its track from the depot to the cars, that being the only passageway provided, shall be remediless. The petitioners at the time of the injury were, by the invitation of the management of this road, on a lawful crossing, for a lawful purpose, using the only means of approach to the cars provided for the use of passengers. In my opinion, the case does not fall within either the letter or the spirit of the statute.

It is also said, that a railroad track is a place of great danger; that any person who goes upon it incautiously, or without using all reasonable precaution to escape injury,

assumes the hazard, and if injury ensues, is without remedy. That is undoubtedly the rule to be applied in determining the liability of a railroad corporation, where the injury is sustained by a person while crossing the track on a public highway. *Pennsylvania R. R. Co.* v. *Matthews*, 7 *Vroom* 532. Such places are, in public judgment, points of such extreme peril, that the law making power has declared all railroad corporations shall mark them, by public notice, as places of danger. (*Revision* 695, § 7.) But this rule has no application to the case where, by the arrangement of the corporation, it is made necessary for passengers to cross the track in passing to and from the depot to the cars. They are bound to provide a way by which passengers may pass in safety. If the way provided crosses a track, no train should be permitted to pass over it at the point where passengers are required to cross it, while a train on the opposite track is receiving and discharging passengers. The mode in which the trains were run in this instance made disaster almost absolutely certain. The utmost precaution could scarcely have averted, at least, weekly accidents. A running arrangement, by which a special or irregular freight train must pass over the track intervening between the depot and a passenger train on the opposite track, just at the time the passenger train is discharging and receiving passengers, without the slightest provision being made for notice to be given of the approach of the freight train, or that it was expected to pass there at that time, I hope, is a rare novelty in railway management, and, I think, must be regarded as an example of gross mismanagement.

There may have been reasons rendering it necessary for the freight train to pass this point just as the passenger train was discharging and receiving passengers—none, however, were shown—but if such necessity existed, it made this point one of extraordinary peril, and the manager of the road was bound to provide extraordinary safe-guards. I repeat the rule, as tersely stated by Chief Justice Beasley, in *Pennsylvania R. R. Co.* v. *Matthews, supra*—"when the company

has created extra danger, it is bound to use extra precautions;" and, it may be added, the precautions to be adopted must be adequate to insure the safety of every passenger who exercises ordinary care. The petitioners, in attempting to pass from the depot to the cars, in the absence of all warning of danger, had a right to regard themselves in a place of safety, where they might safely give their whole attention to the business in hand, and were not bound to be on the lookout for extraordinary perils, created by the gross mismanagement of the persons in charge of the road.

In my judgment, there was no contributory negligence on the part of the petitioners.

The question of damages in this class of cases is always one of great difficulty. With regard to some of the elements, the judgment cannot have anything like a certain guide or measure. Neither of the petitioners have fully recovered from their injuries. The duration and extent of their future disability, nobody can tell; the physician examined would not even hazard a decided opinion. The sum awarded must cover present loss and that which may arise from future incapacity. According to the established rule, it must also embrace compensation for pain and suffering. How can they be estimated? What rule shall be adopted? What degree and duration of pain shall be esteemed equivalent to $100, and what to $1000? In dealing with such elements of compensation, it seems to me, the best conclusions can scarcely be regarded as productions of the judgment. Both petitioners sustained serious injuries. Mr. Klein lost two front teeth, and sustained a fracture of one of the bones of his hip and two ribs. He was totally disabled for more than two months, and cannot now make full time at his work. Mrs. Klein sustained a fracture of her shoulder blade, and a sprain. She is still disabled. Several articles of wearing apparel were destroyed. Mrs. Klein can only recover for her personal injury and suffering. The loss of income from her incapacity, as well as the expenses of her cure, must be recovered by her husband.

I think the amount she is entitled to recover, is $500, and that the amount to be recovered by Mr. Klein, is $1750.

The injuries having been inflicted while the road was under the control of the receiver, and he being liable in his official capacity for the damages, I think they, together with the taxed costs of the proceedings for their recovery, should be paid out of the current earnings of the road. The claim, in my judgment, may be properly included in the expenses incurred in operating the road, and should be paid out of the fund appropriated for that purpose.